**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Kenneth JULIAN, Defendant-Appellant.**

**No. 72-1379.**

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1972.

Edward H. Funston, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., Bruce E. Miller, and Glen S. Kelly, Asst. U. S. Attys., on the brief), for plaintiff-appellee.

Colin M. Clark, Denver, Colo., for defendant-appellant.

Before PHILLIPS, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Following a jury trial, defendant-appellant was convicted of unlawfully es-

caping from the United States Penitentiary Honor Farm at Leavenworth, Kansas, where he had been serving sentences for violations of the Dyer Act in the Southern District of Texas and the District of Nevada.

The first Dyer Act conviction, the Texas one, was on November 1, 1963. He served the maximum time on this and received a mandatory release. While in this status he was convicted of another Dyer Act violation in the United States District Court for the District of Nevada, February 8, 1967, and was confined to the Federal Penitentiary at Leavenworth. Following the completion of his term on that conviction, he became eligible for mandatory release on June 5, 1970. However, before he could be released a warrant for his arrest for violation of his mandatory release on his Texas sentence was executed and he was retained in custody at the Honor Farm facility at Leavenworth.

Soon after that, on June 11, 1970, he escaped from the Honor Farm, and on July 1, 1970, he was arrested by New Mexico authorities and charged with the state crime of concealing stolen property. Following this, he was identified and taken into custody by federal authorities on the District of Kansas escape indictment. However, the federal government authorities proceeded with a Dyer Act prosecution in New Mexico which postdated his escape troubles.

Following his arraignment in New Mexico, defendant, through his attorney, raised the question as to his mental competency to stand trial, and as a result a hearing was held, following which the United States District Court in New Mexico concluded that he was unable to understand the charges against him and to cooperate with counsel. Thereupon, he was committed to the United States *Medical Center for Federal Prisoners* at Springfield pursuant to 18 U.S.C. § 4246. Upon the defendant's being returned from Springfield, the district court, based upon the information obtained from the Springfield information,

found that he was competent to stand trial.

The next step taken by the defendant through his lawyer was to move for dismissal grounded on his allegation that he was incompetent or insane as a matter of law at the time of the alleged offense. In the alternative, he requested the appointment of a qualified psychiatrist for the purpose of conducting a mental evaluation as of the time of the offense. This latter motion was granted, whereas the motion to dismiss was denied. The court commissioned Doctors John McCarthy and Henry W. Blake, psychiatrists from Albuquerque, New Mexico, to examine him and to report to the court.

Dr. McCarthy concluded and later testified that the defendant was not legally responsible for the offense with which he was charged and presumably Dr. Blake testified that he was. In any event, he was convicted, and this conviction was affirmed on appeal. United States v. Julian, 450 F.2d 575 (10th Cir. 1971). Thereupon, he was committed to the United States Penitentiary at Leavenworth.

This was not the end of the defendant's legal problems, for on April 22, 1971, soon after his arrival at Leavenworth, a superseding indictment was returned describing the escape charge referred to above. The United States District Court in Kansas appointed a psychiatrist to examine the defendant prior to trial. It appeared at the omnibus hearing that an insanity question was present, and so on March 22, 1971, the court appointed Dr. William V. McKnelly, a physician connected with the University of Kansas Medical Center. He reported to the court on May 17, 1971, as to the defendant's competency to stand trial and as to his capacity to commit the offense.

Prior to his trial on this present case, which occurred on January 18, 1972, defendant sought to take the deposition of Doctors McCarthy and Blake in Albuquerque or, in the alternative, to have

them present at the trial. These motions were denied.[1]

At trial the court allowed the testimony of Dr. McCarthy to be read to the jury. After that, the government was allowed to call Dr. McKnelly, who had been commissioned to examine the defendant. He testified at the trial on rebuttal that the defendant had the capacity to commit the offense.

The defendant through his present counsel seeks reversal on several grounds, including denial of prompt arraignment and speedy trial; denial of his Rule 17 motion seeking the presence of the New Mexico psychiatrist; the alleged error of the trial court in allowing Dr. McKnelly to testify concerning his examination; and alleged error in receiving the statements of defendant which were related to this examination.

We conclude that under the circumstances of this case it was error to deny the defendant's Rule 17 request to subpoena Dr. McCarthy to testify in person, while at the same time allowing Dr. McKnelly to testify on behalf of the government. It is unnecessary to consider at length the other issues that are raised.

The defendant insisted on representing himself at the trial. His assigned attorney remained to advise him.

I.

DENIAL OF DEFENDANT'S RE-QUEST TO SUBPOENA DOC-TORS McCARTHY AND BLAKE

The court denied the defendant's motion to take the depositions or to secure the presence of Doctors McCarthy and Blake on the ground that these two doctors had testified at the New Mexico trial at which time defendant had been found guilty, and on the further basis that their respective examinations had been brief.[2] The court said:

\* \* \* The opinion of each necessarily was qualified because of the lapse of time between the date of the alleged crime and the date of examination. Under the circumstances, I cannot find that the taking of the depositions of Drs. McCarthy and Blake is necessary in order to prevent a failure of justice.

Rule 17(b) provides that defendant, in order to secure witnesses at government expense, must show, first, that he is financially unable to pay the fees of the witness and, secondly, that the presence of the witnesses is necessary to an adequate defense. If he satisfies the court as to these two factors, the rule provides that the court shall order that a subpoena be issued for service on the named witness.[3] Thus, the rule does not create an absolute right of the defendant to have a witness produced at government expense; it is left to the court to determine in the exercise of discretion whether the requested witness or witnesses are necessary to an adequate defense. See Findley v. United States, 380 F.2d 752, 754 (10th Cir. 1967); Murdock v. United States, 283 F.2d 585, 587 (10th Cir. 1960), cert. denied, 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246 (1961). See also Welsh v. United States, 404 F.2d 414, 417 (5th Cir. 1968); Greenwell v. United States, 115 U.S.App.D.C. 44, 317 F.2d 108, 113 (D. C.Cir.1963).

---

1. These denials, however, were not by the judge who presided at the trial.

2. Presumably their testimony would not be given weight.

3. The full text of this rule is as follows:
DEFENDANTS UNABLE TO PAY. The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government.

■ It is necessary for the trial court in exercising its discretion to take into account the constitutional rights of the defendant that are guaranteed by the Sixth Amendment to have compulsory process for obtaining witnesses in his favor and his Fifth Amendment right which prohibits unlawful discrimination growing out of his financial disability.[4]

■ On November 4, 1971, when the court denied the Rule 17(b) motion, the one witness in Kansas capable of testifying was Dr. McKnelly, who had on May 17, 1971, committed himself to the proposition that the defendant was sane at the time of the commission of the escape offense in June 1970. Thus, the effect of this denial was that the defendant, who had a considerable history of insanity, having been adjudged at one stage by the United States District Court in New Mexico to have been incompetent to stand trial, having had a psychiatrist testify at his New Mexico trial that he lacked capacity to commit the offense there in question, was left without live testimony as to the only issue in the case. There existed no real question as to his guilt of the crime of escape and so due to these peculiar considerations we are constrained to hold that the denial of the requested process constituted an abuse of discretion.

## II.

## ADMISSION OF DOCTOR McKNELLY'S TESTIMONY

Inasmuch as the case is to be retried, we deem it necessary to comment on the defendant's contention that the trial court erred in receiving the testimony of Dr. McKnelly. Defendant argues that §

4244 provides for examination in connection with the defendant's competency to stand trial and that since the statute does not make any provision for examination as to the capacity of the defendant to have committed the crime, and since it provides that statements of the accused on the issue of guilt are not to be received, it follows that psychiatrists ought not to be allowed to testify.

■ As we have noted above, the issue of insanity is a sensitive one; once it is raised by the defendant the government has the burden of proving the guilt of the defendant. The government must establish beyond a reasonable doubt the mental competency of the accused. See Wion v. United States, 325 F.2d 420 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). See also Fitts v. United States, 284 F.2d 108 (10th Cir. 1960).[5]

■ Contrary to the defendant's contention, § 4244 does not create an exclusive provision on the subject of criminal insanity. It undertakes to deal only with incompetency to stand trial. By treating this subject it does not thereby repeal the federal common law procedure applicable to insanity at the time of the commission of the offense. This is clear from our decisions in Wion v. United States, *supra*, and Fitts v. United States, *supra*, which define the procedural principles as well as the principles of substance applicable to mental capacity to commit the offense. When, as here, an issue of insanity is raised, district courts customarily commission a psychiatrist to examine the defendant, not only as to his competency to stand

4. This court has recognized that there is a somewhat delicate balance where the factual issue is the insanity of the defendant. See Wion v. United States, 325 F.2d 420 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964); Fitts v. United States, 284 F.2d 108 (10th Cir. 1960).

5. In *Fitts* this court said:
   * * * The presumption of sanity is a rule of law which stands in the place of evidence, in the absence of evidence to the contrary. When, however, evidence of insanity is produced, from whatever source, the presumption of sanity disappears, and the mental capacity of the accused to commit the crime becomes an essential element to be proven by competent evidence beyond a reasonable doubt.
284 F.2d at 112 (citations omitted.)

trial, but also as to whether he is to be held responsible for the acts charged.

There is not the slightest suggestion in the legislative history of § 4244 that Congress intended in enacting this to abolish the long-standing practice of having one examination cover both competency to stand trial and capacity to commit the crime.[6]

Numerous cases recognize that examinations pursuant to § 4244 embrace also the question of capacity to commit the offense.[7] So, therefore, both reason and authority dictate that the dual examination is valid.

■ Defendant points to the provision in § 4244 prohibiting the admission in evidence of a statement made by the accused to a psychiatrist in a § 4244 examination on the issue of guilt as a reason for excluding the testimony of Dr. McKnelly. The proviso in § 4244 was designed to prevent the receiving in evidence of inculpatory admissions and confessions of the accused given to a psychiatrist in connection with his mental examination. Congress undoubtedly recognized that these statements enjoyed at least a limited privilege since they were being given in order to furnish the psychiatrist information as to the mental condition of the accused. To allow a psychiatrist to testify as to the guilt or innocence of the defendant, by relating admissions obtained in a psychiatric

study would be a gross subterfuge. However, when the defendant has raised the issue of insanity and the psychiatrist is called to testify on this question, the defendant must not be allowed to muzzle him at his option. Apart from the fairness aspect, the evidence is not being received testimonially to establish the guilt of the accused. Rather, it is being used circumstantially as it bears on the defendant's mental state.

■ The foregoing observations are not to be understood as any indication that the court can proceed to receive these statements without careful consideration, for if there remains in the trial a question as to the defendant's guilt of the charge the jury might well find it difficult to distinguish between testimonial admissions and circumstances showing mental condition. Thus, such statements could be prejudicial. The district judge must therefore be guarded in his reception of the defendant's statements and also must be careful in instructing the jury as to the significance of the testimony.

The district court in the instant case continuously cautioned the doctor to refrain from testifying to statements made by the accused as to his guilt and in other respects also the court was cautious in receiving the testimony of Dr. McKnelly. As we view it, the court went further than the law would re-

6. *See* 1 Weihofen, Mental Disorder as a Criminal Defense 332 (1954) where the author has stated:

> Even without the aid of such a statute, trial courts at common law have the power to call witnesses, and courts have at times appointed experts to examine the accused as to his mental condition, and to testify. It is true that this power is rarely invoked, and judges will undoubtedly be more likely to exercise it where it is expressly sanctioned by statute. California and Indiana have gone farther than the Federal rule and have made the appointment of such experts *mandatory* when the insanity issue is raised. It is constitutional to require the defendant to submit to examination by such impartial experts.

7. Tarvestad v. United States, 418 F.2d 1043 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970); United States v. Driscoll, 399 F.2d 135 (2d Cir. 1968); Ruud v. United States, 347 F.2d 321 (9th Cir. 1965), cert. denied, 382 U.S. 1014, 86 S.Ct. 624, 15 L.Ed.2d 528 (1966); Birdsell v. United States, 346 F.2d 775 (5th Cir. 1965), cert. denied, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965); Otney v. United States, 340 F.2d 696 (10th Cir. 1965); Ashton v. United States, 116 U.S.App. D.C. 367, 324 F.2d 399 (1963); Coffman v. United States, 290 F.2d 212 (10th Cir. 1961); United States v. Westerhausen, 283 F.2d 844 (7th Cir. 1960); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, 114 (1959), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960).

quire, and hence no error can be predicated upon the rulings having to do with this testimony. *See* Hall v. United States, 410 F.2d 653 (4th Cir. 1969), cert. denied, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969). *See also* United States v. Albright, 388 F.2d 719 (4th Cir. 1968); Wallace v. United States, 360 F.2d 939 (5th Cir. 1966), cert. denied, 385 U.S. 977, 87 S.Ct. 518, 17 L. Ed.2d 439 (1966).

The judgment is reversed for failure to grant the Rule 17 motion. The cause is remanded for a new trial consistent with the views expressed herein.