UNITED STATES of America, Plaintiff-Appellee,

v.

Odell BENNETT, Defendant-Appellant.

Nos. 74–1410 and 75–1171.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 17, 1975.

Decided June 28, 1976.

48

Bruce E. Miller, Asst. U.S. Atty., Topeka, Kan. (E. Edward Johnson, U.S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

David J. Waxse, Olathe, Kan. (Payne & Jones, Chartered, Olathe, Kan., on the brief), for defendant-appellant.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant-appellant Odell Bennett seeks reversal of his conviction on count three of a five count indictment for forcibly resisting, opposing, impeding, intimidating and interfering with a hospital administrator,

Reeves, at the dress-out room used at Leavenworth Penitentiary in August, 1973, and on a like charge in count four for forcibly resisting a deputy marshal, Lopez, while Reeves and Lopez were engaged in performance of official duties, in violation of 18 U.S.C.A. § 111.[1] Appeal is also taken from a conviction on a similar charge in count five for forcibly resisting Lopez inside a motor vehicle outside the Penitentiary that same day.

The events premising the charges occurred at the time of and shortly following a rectal examination of defendant, a part of the security procedures used before Leavenworth inmates appear in court or are transferred. See *Daugherty v. Harris,* 476 F.2d 292 (10th Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91. Defendant had been ordered produced in federal court on a writ for appearance in connection with civil actions brought by defendant.

At a first trial in May, 1974, the jury acquitted defendant on count one of the same indictment which had charged a similar offense against other prison employees. Count two, charging instigation of a mutiny on the same day, was dismissed by the Government. As stated, a conviction occurred on count three. The jury was then unable to agree on counts four and five and they were retried in January, 1975, and the convictions on these counts resulted. The combined appeal on the record on both trials thus challenges three convictions on similar charges under 18 U.S.C.A. § 111.

Defendant argues nine main propositions, claiming that the trial court erred: (1) in denying defendant's constitutional right to defend himself with the assistance of counsel, which he voluntarily and intelligently elected to do; (2) in the trial judge's refusing to disqualify for personal bias and prejudice; (3) in his denying use of the defense of lack of the requisite mental capacity necessary to form the specific intent required and in excluding testimony there-

1. The indictment originally also charged Bennett with assaulting, opposing, impeding, intimidating and interfering with Reeves and Lopez. As to Reeves, the assault allegation was strick- en by the court for lack of proof (R. VI–A, 366). As to Lopez, the court limited the charge to the allegation of resisting, again because of lack of proof (R. II–B, 435).

on; (4) in denying use of compulsory process to obtain necessary witnesses; (5) in denying a motion to dismiss for invidious and discriminatory prosecution and in denying discovery thereon; (6) in refusing the admission in the second trial of defendant's testimony recorded at the first trial; (7) in denying a motion *in limine* to exclude proof of convictions subsequent to the first trial; (8) in overruling a motion to dismiss and to strike the petit jury array for improper composition excluding Black jurors; and (9) in not dismissing the charges for omission of allegations that the acts alleged were done "knowingly" and "willfully."

We will detail the facts as we treat the appellate contentions.

## I

### The defendant's claim of error in denial of self-representation

The defendant strenuously argues that the trial court erred (1) in denying him the right to represent himself, with assistance of counsel, defendant wishing to conduct portions of the trial; and (2) in denying outright his request to represent himself without assistance of counsel. He relies on the statutory provisions in 28 U.S.C.A. § 1654 allowing parties to plead and conduct their own cases in the federal courts personally or by counsel, and on the Sixth Amendment guarantee, construed in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, to include a constitutional right of self-representation.

The factual background is critical and we must analyze it in some detail. It is important to remember that two trials are involved, the first occurring in May, 1974, and the second in January, 1975.

In a pre-trial motion on April 2, 1974, defendant requested the right to assist in his own defense (R. I–A, 196–98).[2] The court informed defendant he could conduct his own defense, but would have to do so completely, or that he could have appointed counsel. A similar motion was made on

April 18, with a request for the right to make an opening and closing statement and to conduct cross-examination of particular government witnesses. At hearings before the first trial the court ruled that defendant could cross-examine particular witnesses, but that in so proceeding he could not make an opening or closing statement. At trial the court permitted the cross-examination of several witnesses by defendant and he actually conducted such cross-examination. He was represented by counsel at the trial on May 6 through 9, 1974.

From our examination of the written and oral motions of defendant we are satisfied that up through the first trial the defendant was asserting only the right to represent himself in conjunction with the assistance of counsel. Defendant argues that the right to self-representation under 28 U.S.C.A. § 1654 and *Faretta,* in combination with his right to the assistance of counsel guaranteed by the Sixth Amendment, sustain his right to such hybrid representation. This court, however, has considered and rejected this claim subsequent to *Faretta.* See *United States v. Hill,* 526 F.2d 1019, 1024–25 (10th Cir.). We there held that *Faretta* does not alter the established rules concerning hybrid representation, permission for which was recognized as being discretionary with the trial court. As in the *Hill* case, we feel that there was no abuse of discretion here in denying hybrid representation to the defendant and in limiting his participation to the cross-examination of several witnesses.

As noted, the first trial resulted in a conviction on count three, but a mistrial was declared as to counts four and five. They were retried in January, 1975, and convictions resulted.

Prior to the second trial there were several hearings involving the self-representation issue. On October 29, 1974, defendant orally moved for permission to assist in his own defense by making opening and closing statements and by conducting cross-exami-

2. Because our record covers two trials we have designated record volumes from the first trial as "A" and those covering the second trial as "B," where confusion would otherwise result.

nation of certain witnesses. The trial court informed defendant he would again be permitted to cross-examine some witnesses but would not be allowed to make opening or closing statements. Defendant immediately moved that he be allowed to defend *pro se* (R. II–B, 14). The trial judge stated that he could not deny that request, which would be granted, warning that defendant would be limited to issues that are pertinent (Id.). And the court advised defendant that standby counsel, Mr. Shaw, was being appointed and would be available to take over the defense if defendant's conduct required his removal from the courtroom.

The second trial was set for December 10. At a further pre-trial hearing on December 4 defendant again renewed his request to assist counsel by making opening and closing statements and conducting cross-examination. In connection with this request defendant said:

> It is my statement now that I know I am not a qualified attorney to conduct a full trial, but there are certain aspects of the trial that I feel that I am competent to proceed with. (R. II–B, 43).

Defendant then said his motion to thus proceed had been denied by the court; that he had been given an "either or" alternative; that he had been placed in the difficult position of conducting his complete trial, which he would still do if the court denied him limited assistance of counsel (Id.).

Upon this further statement by the defendant, the trial court reinstated appointed counsel and informed defendant that he could cross-examine witnesses but could not make opening or closing statements. Defendant then renewed his motion to conduct his own defense. The court denied the motion, stating "we have fenced around long enough." (R. II–B, 47).[3]

---

**3.** In the appendix to this opinion we reproduce the portion of the record leading up to the denial of the motion for self-representation six days before the date (Dec. 10, 1974) when the second trial was originally scheduled. The record demonstrates the different positions taken by the defendant and the reasons stated by the trial court for its rulings.

During the same lengthy hearing on December 4 the trial court reaffirmed his ruling several times, rejecting renewed motions by defendant to represent himself. The court, however, continued the case for two weeks to permit defendant to retain counsel. On December 12 defendant advised the court he had been in contact with Mr. Waxse. The court contacted this attorney and discussed with him the time needed for trial preparation, and again discussed this with the defendant in court. Defendant advised that he was unable to pay Mr. Waxse and the court appointed him.

Mr. Waxse represented defendant at the second trial on January 14 and 15, 1975. Prior to trial this counsel filed a written motion on January 10 ". . . to reconsider the defendant's motion to conduct certain portions of the trial pro se." (R. I–B, 64). The court denied the motion that day (Id. at 142).

■. As the trial court recognized, it is clear that both statutory and constitutional rights to self-representation exist. *Faretta, supra,* 422 U.S. at 812–13, 832–36, 95 S.Ct. 2525. However, we are persuaded that the right is one which the defendant must clearly and unequivocally assert before trial, as the accused did in *Faretta. Faretta, supra,* 422 U.S. at 835, 95 S.Ct. 2525. This is necessary because the trial court faces the difficult related problem of ascertaining whether there is an intelligent and voluntary waiver of the right to counsel. See *Johnson v. Zerbst,* 304 U.S. 458, 463–64, 58 S.Ct. 1019, 82 L.Ed. 1461.

■ The trial court here based the denial of self-representation on two grounds. He referred to the defendant's statement that he knew he was not qualified to conduct a full trial, and the court also said he was not going to let the defendant "switch back and forth on me." (R. II–B, 66).[4] We

---

**4.** In denying a motion for a new trial after the second trial the court referred to defendant's disruptive activities in trials of cases in the district and to his changing positions on the

must agree that a court determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation. See *Faretta, supra,* 422 U.S. at 836, 95 S.Ct. 2525; *United States v. Price,* 474 F.2d 1223, 1227 (9th Cir.). The only relevant determination is whether the accused makes an understanding waiver of his right to counsel. Ibid. We are satisfied, however, that this record amply supports the trial court's finding and conclusion that defendant Bennett forfeited his right to self-representation by his vacillating positions which continued until just six days before the case was set for trial. The record does not show that the defendant took a clear and unequivocal position on self-representation, and the ruling of the trial court was justified. See *Meeks v. Craven,* 482 F.2d 465, 467–68 (9th Cir.); *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15–16 (2d Cir.), cert. denied, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020.

In sum, we feel there was no error in the rulings in either trial on the self-representation matter.

## II

### *The trial judge's refusal to disqualify*

Defendant claims error occurred when the trial judge refused to disqualify himself. Motions for disqualification made before both trials were overruled.

On May 6, 1974, the first day of the first trial, defendant filed a motion and affidavit for disqualification under 28 U.S.C.A. § 144 (R. I–A, 310 *et seq.*). They alleged personal bias and prejudice and antagonism towards the defendant; and the motion stated that the defendant offered to prove that the judge had a conscious or unconscious belief

that the defense was a sham, and that he believed the defendant was guilty and could never believe the defense.

We have considered the record on the motion and the rulings made and the requirements of 28 U.S.C.A. § 144. The trial judge was not called on or entitled to consider the truth of the facts alleged and could only determine the legal sufficiency of the affidavit; if it was sufficient, the statute required that he proceed no further. *Berger v. United States,* 255 U.S. 22, 34–36, 41 S.Ct. 230, 65 L.Ed. 481. We must agree with the trial court that the affidavit was insufficient. It lacked facts having the tendency to show personal bias and prejudice and contained only insufficient conclusions. *Knoll v. Socony Mobil Oil Co.,* 369 F.2d 425, 430 (10th Cir.), cert. denied, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138.

On December 12, 1974, the court announced that the second trial would be held on January 13, 1975, and Mr. Waxse was appointed as defense counsel (R. I–B, 59; II–B, 100–04). On January 10 a second affidavit for disqualification of the trial judge under 28 U.S.C.A. § 144 was filed. The court denied this application as untimely (R. II–B, 111).

Under the statute the affidavit was required to be filed not less than 10 days before the beginning of the term at which the proceeding was to be heard or good cause shown for failure to file it within such time. While court terms are obsolete, a motion filed after the case is set for trial and only three days before the scheduled trial is untimely. *Knoll v. Socony Mobil Oil Co.,* supra, 369 F.2d at 430. The affidavit showed no sufficient reason for its late filing. And, in any event, we again feel that the affidavit was merely conclusory and therefore legally insufficient. Ibid.[5]

---

self-representation question. The court said that ". . . by his conduct he forfeited his right to represent himself at any portion of the trial." (R. II–B, 526).

**5.** We have also considered whether the additional new statute on disqualification, 28 U.S.C.A. § 455(a), effective December 5, 1974, re-

quired disqualification from the case as one where the judge's impartiality might reasonably be questioned. We again feel the circumstances shown and the portions of the record cited to us demonstrate no error occurred by the trial judge proceeding to hear the case.

## III

### The exclusion of testimony on the defendant's capacity to form the requisite intent

Defendant complains of the exclusion at both trials of expert testimony.[6] The proof excluded was that of experts offered to show the mental state of defendant in the circumstances surrounding the alleged offenses. Relying primarily on *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969, defendant argues there was an erroneous denial of the use of the defense of lack of the requisite mental capacity to form the specific intent for the offense of an assault under 18 U.S.C.A. § 111. (Appellant's Brief, 23–27).

There were efforts to offer such proof at both trials. Before the first trial in May, 1974, defendant had requested a psychiatric examination by a Dr. Rosenberg, which the trial court granted. Then, following study of the report of the doctor, defense counsel advised the court they were confident there would be no defense based on mental responsibility (R. V–A, 80–81). Again after the Government announced it was not bringing certain witnesses on the issue, defense counsel said there was no defense of insanity or lack of mental responsibility, or of any diminished capacity (R. V–A, 152).

At trial, however, defendant did seek to offer proof from Dr. Rosenberg, and from a psychologist, Dr. Fox. The offer was to prove that defendant's reaction to the anticipated rectal search was a common one; that it was a reaction described as "homosexual panic"; and that in connection with defendant's reaction, the proof would be

relevant as far as intent was concerned (R. VI–A, 16–17). Dr. Rosenberg described the reactions of defendant as a "normal variation to a situation which represented massive psychic and physical trauma and attack." (Supp.Rec. I).[7]

The trial court stated he was not going to permit the witnesses to testify as to what the defendant's state of mind was. He said the defendant could testify to establish the circumstances, but that the psychiatrist could not testify that the defendant did not intend to do what he did because he was in fear, and substitute his judgment as to defendant's state of mind (R. VI–A, 18).

Again in the second trial the defense counsel offered the same type of proof,[8] although before trial he had told the court that the defense was not insanity (R. II–B, 128). The offer was that Dr. Fox, the psychologist, would testify concerning the juvenile background of defendant, which might serve as a basis for impulsive behavior; the psychological implications of the rectal examination in terms of homosexual assault, or pressure and intimidation; the environment producing a prior homosexual fear and leading to impulsive, dishonest and compulsive acts, depending on the severity of the homosexual threat.[9] The trial court stated that it was his view that a witness may not testify as to the state of mind of another person, and that the prior reasoning and ruling against admission of such testimony would stand (R. II–B, 368–69).

■ While the exclusion of proof which touches on competency causes concern, we feel there was no reversible error. In connection with a competency issue the general

6. Defendant makes a related claim of error in the exclusion of lay testimony concerning circumstances affecting defendant's state of mind. This point is covered by the discussion in this Part III and in Part IV, *infra*.

7. In Part B of the appendix to this opinion the report of Dr. Rosenberg is reproduced. This report, which the court had seen, was referred to in making the offer of proof (R. VI–A, 16).

8. In the first trial, defendant had been permitted to testify to having been in solitary confinement, and to having been on a hunger strike for

22 days. At the second trial, the defendant sought to produce several witnesses to testify to these circumstances, but the trial court refused to allow them to be subpoenaed. We reject the claim of error in this ruling in Part IV, *infra*.

9. Counsel said the proof would also be that if the background and environment "were properly and clinically combined with personal, and deeply internalized and heavily conditioned responses to homosexual fears impulsive behavior could be predicted." (R. II–B, 371).

rule is that the trial court should freely admit all evidence which appears to be relevant, as then Judge Blackmun cautioned. See *Pope v. United States*, 372 F.2d 710, 736 (8th Cir.), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317, see also *Wion v. United States*, 325 F.2d 420, 430 (10th Cir.), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309. However, as noted defense counsel here had disclaimed a competency defense and offered proof on the theory of explanation by the scientist as to defendant's state of mind and intent in the circumstances. This is the theory recognized in *United States v. Brawner*, 153 U.S.App. D.C. 1, 471 F.2d 969 that expert proof may be admitted as tending to show, in a responsible way, that the accused did not have the specific mental state required for a particular crime or degree of crime. Id. at 998–1001.[10]

▪ Under such a theory, however, the trial court has the authority to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues. See *United States v. Brawner, supra*, 471 F.2d at 1002; *United States v. Demma*, 523 F.2d 981, 986 (9th Cir.). The offers of proof here were more in line with an explanation or justification of defendant's conduct, as where Dr. Rosenberg described defendant's reactions as a "normal variation to a situation which represented massive psychic and physical trauma and attack." Thus the testimony was not directed at negating a particular mental capacity so much as it was offered as a justification. In view of the nature of the proof offered and the somewhat vague scientific reasons for the testimony, we are satisfied that there was no error here in the trial court's determination that the proof should be excluded. See *United States v. Demma, supra*, 523 F.2d at 986–87; *Rhodes v. United States*, 282 F.2d

59, 62 (4th Cir.), cert. denied, 364 U.S. 912, 81 S.Ct. 275, 5 L.Ed.2d 226.

## IV

### *The claim of error in denial of compulsory process for some witnesses*

Defendant argues that the trial court erred in both trials in refusing requests for a number of witnesses, violating his constitutional rights to compulsory process under the Sixth Amendment and under Rule 17(b), F.R.Crim.P., citing *United States v. Julian*, 469 F.2d 371 (10th Cir.), among other cases.

▪ Constitutional rights are involved and the trial court must take into account the right to compulsory process under the Sixth Amendment, and the Fifth Amendment due process guarantee against discrimination because of indigency, in deciding whether to issue subpoenas sought by an indigent. *United States v. Julian, supra*, 469 F.2d at 371. If defendant satisfies Rule 17(b) by showing inability to pay fees for witnesses and the necessity for the witnesses at trial, the rule provides that the court shall order that the subpoenas be issued.

▪ We are satisfied, however, that there was no error or abuse of discretion in these proceedings. The complaint concerning the first trial is general, lacking a showing as to harm caused by the rulings (see Appellant's Brief, 27). And we note that several prospective witnesses sought for the first trial would have testified only to events pertaining to count one. Since the defendant was acquitted on that count, that complaint is moot.

▪ As to the second trial, the argument is directed at the refusal to subpoena some five witnesses who would testify concerning circumstances affecting the defendant's state of mind. As explained in Part III, *supra*, the exclusion of testimony of this quality was not improper. Hence the denial of the subpoena was not error. The remaining witnesses mentioned in the brief

---

10. This theory is referred to in Rule 12.2(b), F.R.Crim.P., effective December 1, 1975, after the trials involved on this appeal.

(see Appellant's Brief, 27) are character witnesses and the allowance of two witnesses for such proof was no abuse of discretion.

In sum, we conclude there was no abuse of discretion or denial of the defendant's rights in the rulings on production of witnesses.

## V

### *The claim of invidious and discriminatory prosecution*

Before both trials defendant filed motions to dismiss the indictment for invidious and discriminatory prosecution and for an evidentiary hearing, with supporting affidavits and motions for discovery (R. I–A, 225; I–B, 8, 65). The motion preceding the first trial was denied as untimely (R. V–A, 133), and those preceding the second trial were denied as having ". . . no basis at all for considering this to be discriminatory prosecution." (R. II–B, 116). Defendant argues there was clear error in the rulings relying on equal protection principles pronounced in *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, and on grounds of retaliatory and discriminatory prosecution, citing *United States v. Falk*, 479 F.2d 616 (7th Cir.), and *United States v. Steele*, 461 F.2d 1148 (9th Cir.).

Defendant makes the general assertions that hundreds of others have not been prosecuted for similar resistance to the rectal examinations; that he is being prosecuted because of exercise of First Amendment rights and for being an active "jailhouse lawyer" who has aided over 100 prisoners and has filed over 25 civil pleadings himself; and that selection of those to be subjected to such examinations has been arbitrarily made.

■ We start with the principle that selective enforcement is not in itself a constitutional violation. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446; *United States v. Brookshire*, 514 F.2d 786, 788–89 (10th Cir.). Moreover, there is a presumption that prosecution for violation of the criminal law is in good faith. *United*

*States v. Falk, supra*, 479 F.2d at 620. We find no error in the denial of the motions, considering the nature of the showing made in the motions and affidavits and the presumption of good faith in the prosecution. *United States v. Radetsky*, 535 F.2d 556, 571 (10th Cir.).

## VI

### *The trial court's refusal to admit defendant's testimony in the first trial*

■ Defendant presented a motion *in limine* to rule out examination of defendant, if he took the stand, concerning any convictions or incidents occurring after the offenses in question, which was denied (see Part VII, *infra* ). As a result of this ruling, defendant elected not to take the stand (Appellant's Brief, 35). He then later requested that the transcript of his testimony at the first trial regarding counts four and five be admitted at the second trial when those counts were retried.

Defendant argues that in these circumstances he was "unavailable" at the second trial and thus his transcribed testimony from the first trial became admissible. The argument is imaginative but unpersuasive. The right not to testify is clearly his, but the defendant may not invoke that right and avoid facing cross-examination while claiming the right to have his testimony put before the jury.

## VII

### *The denial of the motion in limine to exclude evidence of defendant's convictions subsequent to the first trial*

■ Defendant's first trial concluded in May, 1974. During the second trial and before the defendant elected not to testify, the defense made an oral motion *in limine* that if the defendant took the stand, the Government not be allowed to inquire as to convictions or incidents occurring after the date of the offenses in question, which was denied.[11]

11. We realize that the position stated in the appellate contention is different from that

which is here stated to have been taken in the oral motion at trial (R. II–B, 361–62). As stat-

Defendant argues the court erred, relying on Rule 609(a), Federal Rules of Evidence. He says that such impeachment should be limited to offenses involving dishonesty or false statements and that it was error to rule that any conviction would be admissible without consideration of its prejudicial effect.

We cannot agree. The intervening conviction was one that occurred in September, 1974, for instigating a riot, we are advised. In any event we can see no error here under the new rule, although it was not then in effect, or under the existing practice that when a defendant takes the stand in a criminal case, his credibility may be impeached and his testimony attacked in the same manner as any other witness, including reference to prior convictions. See *United States v. Williams*, 445 F.2d 421, 423 (10th Cir.), cert. denied, 404 U.S. 966, 91 S.Ct. 342, 30 L.Ed.2d 286.

### VIII

*The denial of the motion to strike the petit jury array and stay the proceedings*

The defendant claims error in denial of a motion to strike the petit jury array and to stay the proceedings. He says there was a violation of the Jury Service and Selection Act of 1968, 28 U.S.C.A. § 1861, *et seq.*, there being only one Black person on the jury panel. He argued that there was a population of 5% Blacks in the counties in this division of the federal district (R. V–A, 139). He points to proof that lists of actual voters were used for jury selection, instead of voter registration lists, which the statute permits and says this would avoid an improper selection since there was failure of Black persons to actually vote in the same proportion as others.

We cannot agree. The proof offered failed to show that a recognizable, identifiable class of persons otherwise enti-

ed, the motion at trial sought exclusion of convictions occurring subsequent to the *offenses* in question, while the appellate contention argues for exclusion of convictions occurring subse-

tled to be jurors "has been purposefully and systematically excluded from jury service." *Leggroan v. Smith*, 498 F.2d 168, 170 (10th Cir.). There was no showing of Blacks voting in lower proportion to White persons in the pertinent counties from which the array was drawn, the proof made being only on national figures. The supplementation of voter lists is the exception, not the rule, and absent a showing of deficient representation the use of an approved jury selection process is lawful. See *United States v. Mitchell*, 397 F.Supp. 166, 175 (D.D.C.); see also *United States v. King*, 492 F.2d 895 (8th Cir.).

### IX

*The sufficiency of the indictment*

Defendant maintains that the indictment was defective for failure to allege that the defendant acted "knowingly" and "wilfully" in commission of the alleged offenses in violation of 18 U.S.C.A. § 111. A similar argument was considered in *United States v. Hill*, 526 F.2d 1019, 1026–27 (10th Cir.), and rejected. We are satisfied that the indictment was sufficient in light of the *Hill* opinion and *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541.

Concluding that no reversible error is shown, the judgment is

**AFFIRMED.**

### APPENDIX

A. *Portions of the record relevant to the self-representation*

At the hearing on December 4, 1974, the following discussion occurred on the question of self-representation (R. II–B, 42–47):

THE DEFENDANT: Also this—I would like to—this is the completion of the Motions I'd like to address myself to coming to Court—in regard to the Court offering me assistance of counsel. I'd like for the record to be clear that I made

quent to the first *trial*. We see no difference in substance, but must address the motion as made at trial.

a Motion to the Court for limited assistance of counsel; that I would like to conduct certain parts of the trial proceedings. It is my statement now that I know I am not a qualified attorney to conduct a full trial, but there are certain aspects of the trial that I feel that I am competent to proceed with. This Motion was denied by the Court. And because of this I was given an, "either or" alternative. I could either conduct the full trial or I could have a lawyer, an attorney to conduct it. And because of this I was placed in the position of conducting my complete trial, which I will do if the Court still denies me limited assistance of counsel.

THE COURT: Mr. Bennett, you are just playing fox with the Court. I can't understand what you want. You want to take possession of the Court room and you want to run it the way you want to run it. It is my responsibility to run this Court and I will do it. I will give you every right you are entitled to, but I am not going to let you dictate how this trial is going to be run. Do I make that clear? If I haven't, I will try to make it clearer.

THE DEFENDANT: I have never tried to dictate to you, threaten you or run your court room.

THE COURT: You would if I let you.

THE DEFENDANT: No, sir, I wouldn't.

THE COURT: You are always shifting ground on me. You are doing it now. I told you that you could represent your self; that the law gave you that right. And I understood you to say you would.

THE DEFENDANT: That was after my Motion for assistance.

THE COURT: Now you don't want to do that?

THE DEFENDANT: I will cause I am compelled to.

THE COURT: You are not compelled to do anything. I will direct Mr. Shaw to conduct your trial and I'll do it right now if you will say so.

THE DEFENDANT: I would like to point out something on the Docket Entry sheet. Could I see that a moment, Mr. Shaw?

I think the record speaks clearly for itself on October 29, 1974, I made several Motions in the presence of the Court. I made the Motion that I be allowed to assist in my defense. This Motion was denied. This is when I made the motion that I be allowed to proceed pro se. That Motion was granted.

THE COURT: Yes, sir.

THE DEFENDANT: There is a case just came down Your Honor, that maintains—Mr. Shaw read it with me yesterday—it maintains that this was infringement of a constitutional right that I have to assistance of counsel denying me limited assistance of counsel.

THE COURT: What do you want the Court to do? You tell me. We are not going to deny you any right. Be specific about it, don't be foxing around the bush. Tell me what you want to do and this is what we will do. But I want you to stand hitched. Do you understand that?

THE DEFENDANT: I would like to make an opening statement.

THE COURT: Now, you are not going to represent yourself or you are going to assist Mr. Shaw? Is that what you are saying? Tell me first what you want to do.

THE DEFENDANT: I am trying to tell you now.

THE COURT: No, you are telling me whether you want Mr. Shaw to be your lawyer.

A. I am trying to tell you now what—I want to make an opening statement.

THE COURT: Tell me the rest of it.

THE DEFENDANT: I would like to cross examine certain witnesses.

THE COURT: Which ones?

THE DEFENDANT: I don't know which ones. You haven't granted any yet, Judge. I would like to reserve the right to make a closing argument. I would like to—I am not well versed

enough to law to make objections. I won't make any objections.

These are the three things that I would like to have.

THE COURT: Well, now, tell me what you want Mr. Shaw to do.

THE DEFENDANT: I don't know. Whatever else there is in the trial procedure to be carried out.

THE COURT: You want him to conduct the trial; don't you?

THE DEFENDANT: No, sir, if I wanted him to conduct the trial I would have never asked that I be allowed to assist in my own defense if I was going to ask him to conduct the complete trial.

THE COURT: Now Mr. Bennett, I permitted you to participate in this trial previously and you had the benefit of very able counsel all the way through. You were given every right.

THE DEFENDANT: Mr. Shaw does not object to this it is the Court that objects to it.

THE COURT: You haven't told me yet what you want Mr. Shaw to do.

THE DEFENDANT: But Mr. Shaw does not object to my limited participation.

THE COURT: What do you want him to do? Tell him for the record what you want him to do and tell me what you want him to do.

THE DEFENDANT: Everything else that takes place in this trial.

THE COURT: You mean you want him to conduct your trial except the part you want to do? Is that what you are saying?

THE DEFENDANT: That is right, Your Honor.

THE COURT: You are saying that, "Yes," that is what you want to—

THE DEFENDANT: Yes.

THE COURT: I want to get a positive statement out of you.

THE DEFENDANT: That's correct.

THE COURT: Very well.

Mr. Shaw, the Court is going to direct that you conduct this trial; that you permit him to examine the witnesses, cross examine the witnesses. That is what he said that he desires. Now, I will not permit him to make an opening statement. I will not permit him to make a closing argument.

THE DEFENDANT: If you are not going to permit me to do that you are denying me the assistance—

THE COURT: We are going to proceed just the way the Court says.

Go ahead.

THE DEFENDANT: I renews my Motion to be allowed to conduct my own defense.

THE COURT: It is overruled. It is overruled. We have fenced around long enough.

The reasoning of the trial court was further stated on December 4, 1974, following additional self-representation requests (R. II–B, at 66):

THE DEFENDANT: I think the record stands for itself whether I am capable and qualified.

THE COURT: It is up to me in my discretion to determine that and I determine that you are not.

THE DEFENDANT: Did I have a right under Title 28 Section 1654 to defend myself?

THE COURT: Yes. If I think you are capable and competent to do it, but you have already told me you weren't so that is where we are going to let it set. I'm not going to let you switch back and forth on me. I have let you do that ever since you have been before me in this case.

Further, in denying the motion for a new trial after the second trial, the trial court stated (R. II–B, 526):

The Court did deny the Defendant's Motion to conduct certain portions of the trial pro se. The Court has observed the conduct of this Defendant. The Court is

aware of his disruptive activities in trials of cases which he has been involved in in this District and the Court observed that when the Court indicated he could represent himself then he wanted a lawyer. Then when I got a lawyer then he wanted to represent himself. So what he is undertaking to do has been switch back and forth on a good many issues just for the purpose of trying to entrap the Court into committing error. He has been very clever about it. The Court has recognized this. The Court thinks by his conduct he forfeited his right to represent himself at any portion of the trial.

B. *Portions of the record relevant to the issue of exclusion of expert testimony*

The report of Dr. Stanton L. Rosenberg,

STANTON L. ROSENBERG, M. D.
PROFESSIONAL ASSOCIATION
10901 GRANADA LANE
OVERLAND PARK, KANSAS 66209
913–383–3050

DIPLOMATE

ADULT PSYCHIATRY        AMERICAN BOARD OF PSYCHIATRY & NEUROLOGY
FELLOW AMERICAN PSYCHIATRIC ASS'N.

---

addressed to defendant's counsel at the first trial and dated April 30, 1974, appears in the Supplemental Record and reads as follows:

30 April 74

Mr. Gary Eldredge

I saw Mr. Bennett for evaluation at the Federal Penitentiary, Leavenworth, on 27 April '74. I understand he is being brought to trial on four counts of assaulting a federal officer and one count of mutiny. I understand these alleged offenses to have occurred when Mr. Bennett was being taken from solitary confinement for purposes of a rectal examination prior to a court appearance. I understand the purpose of such an examination was to search for "contraband"; I understand this examination was not conducted by a physician in the privacy of an examining room.

Whatever may be the facts as to Mr. Bennett's reaction to this event, I do not consider him to have been functioning under "diminished capacity" at the time of this examination. Rather, I feel his reactions to have been a normal variation to a situation which represented massive psychic and physical trauma and attack. Rectal examinations are properly carried out only by physicians; in this instance the rectal was equal to rape, homosexual assault, and was a mortifying, degrading assault upon Bennett's remaining vestiges of dignity and masculinity. If contraband were indeed so suspect, fluoroscopy and stool examination would have better been employed. I am certain everyone except Bennett would have been happy had he passively submitted to this examination. I would submit to you that for Bennett himself, the only way to handle what must have been an act of extraordinary provocation, inspiring only terror and defensive rage, was to have fought back.

I hope these opinions will be of assistance to you.

/s/ Stanton L. Rosenberg, M.D.