FILED
United States Court of Appeals
Tenth Circuit

**March 8, 2024**

**Christopher M. Wolpert
Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

WARREN DALE WATSON,

    Petitioner - Appellant,

v.

MARK FAIRBAIRN; THE ATTORNEY
GENERAL STATE OF COLORADO,

    Respondents - Appellees.

No. 23-1392
(D.C. No. 1:22-CV-02695-DDD)
(D. Colo.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Petitioner Warren Watson, appearing pro se, seeks a certificate of appealability ("COA")

to challenge the district court's denial of his 28 U.S.C. § 2254 application for habeas

relief on three grounds.  Watson also requests leave to proceed in forma pauperis.

Because no reasonable jurist could disagree with the district court's resolution of

Watson's three habeas claims, we deny his request for a COA and dismiss this matter.

We also deny his motion to proceed in forma pauperis on appeal.

---

    [*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

Watson faced a multiple-count indictment charging him with state felony offenses related to the murder, sexual assault, and robbery of an attorney in Lakewood, Colorado. R. Vol. II at 98. After being arrested, he waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), in an interview with Colorado detectives, which ended with two videotaped confessions lasting nine hours total.

As Watson awaited trial, he switched back and forth between being represented and appearing pro se. To start, after the public defender's office had represented Watson for eighteen months, he requested to proceed pro se. Next, he consulted with alternate defense counsel, and the trial court granted his second request and appointed advisory counsel to assist him throughout the state proceedings.

But that arrangement did not last long. Watson went back to the court and requested counsel after getting frustrated as a pro se litigant at a suppression hearing. At this point, the trial court reappointed the public defender. But again, months later, Watson requested to change things for a fourth time, asking the court yet again to proceed pro se. This time, however, the court denied his request. During this timeframe, Watson was evaluated as competent to stand trial.

The public defender went on to represent Watson, and a jury convicted him of first-degree murder, sexual assault, aggravated robbery, aggravated motor vehicle theft, and escape. Afterward, the court adjudicated Watson as a habitual criminal and sentenced him to life in prison without the possibility of parole. The Colorado Court

of Appeals affirmed his convictions, and the Colorado Supreme Court denied his petition for certiorari review.

Having had no success on appeal, Watson turned to postconviction relief. But the state trial court denied his motion for such relief, the Colorado Court of Appeals affirmed the trial court's order, and the Colorado Supreme Court denied Watson's petition for a writ of certiorari.

Watson then timely initiated a habeas corpus proceeding in federal court. Of relevance, he claimed that three constitutional violations occurred: (1) the state trial court violated his Sixth Amendment right to self-representation when it denied his fourth request to change his representation status; (2) trial counsel was constitutionally ineffective by misadvising him on the use of an "involuntary intoxication" affirmative defense; and (3) trial counsel was constitutionally ineffective by creating a conflict of interest by bribing him to accept a plea deal with the offer of money and a television in jail.

For each claim, the district court ordered that Watson's application for habeas corpus and a COA be denied. The court also certified pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from its order would not be taken in good faith. Now, Watson petitions for a COA on the three constitutional grounds and files a motion for leave to proceed in forma pauperis on appeal.

## II.

Watson must obtain a COA to appeal the district court's denial of his § 2254 application. 28 U.S.C. § 2253(c)(1). This Court can issue a COA only if a petitioner

has "made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Therefore, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the district court dismissed Watson's application based on the merits of his habeas claims, not on procedural grounds. For each claim, Watson must therefore prove "something more than the absence of frivolity" or mere "good faith" to obtain a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

**III.**

Watson petitions for a COA based on three constitutional violations. He claims that (1) the state trial court violated his Sixth Amendment right to self-representation, and that his trial counsel was constitutionally ineffective by (2) misadvising him on the use of an "involuntary intoxication" affirmative defense and (3) creating a conflict of interest by bribing him with money and a television to coerce him into a plea deal. We explain how no reasonable jurist could disagree with the district court's denial of habeas relief for these claims.

**A.**

To begin, Watson argues that the state trial court violated his Sixth Amendment right to self-representation when it denied his fourth request related to his representation status—in which he again asked to proceed pro se. A criminal defendant has the right to "proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807 (1975). But

4

the right has its limits.  *See, e.g.*, *Indiana v. Edwards*, 554 U.S. 164, 171 (2008) (collecting cases).  Courts should "indulge in every reasonable presumption against waiver" of the Sixth Amendment right to counsel.  *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *see United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir. 1994) ("We have repeatedly shown concern with the use of the right to waive counsel as a 'cat and mouse' game with the courts.").

In some situations, defendants attempt to vacillate or manipulate the right to proceed pro se.  When that happens, courts "must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation."  *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000) (citation omitted).  Similarly, when "a defendant [] deliberately engages in serious and obstructionist misconduct," a "trial judge may terminate self-representation."  *Faretta*, 422 U.S. at 834 n.46; *see, e.g.*, *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976) (affirming a trial court's conclusion that a defendant did not take a clear and unequivocal position on self-representation because he "forfeited his right to self-representation by his vacillating positions which continued until just six days before the case was set for trial").

Below, Watson challenged the trial court's denial of his request to proceed pro se at trial based on the finding that he "was manipulating the trial process by vacillating about whether he wanted to represent himself."  R. Vol. II at 115.  Watson argued that the trial court should have more strongly considered that "his medications

had been to blame for his conduct at the motions hearing, and that because his dosage had been reduced, he now felt that he could proceed in his own defense." *Id.*

After providing a detailed procedural history, the district court decided that the Colorado Court of Appeals reasonably determined the facts when considering the evidence presented. Specifically, the district court found it reasonable to conclude that Watson "was manipulating the trial process by vacillating about whether he wanted to represent himself; and his medications were not to blame for his conduct at the suppression hearing and his decision to request that defense counsel be reappointed [was] reasonable." *Id.* at 117.

To get there, the district court relied on a doctor's report that clarified that Watson's "medications typically would not cause significant neuropsychological impairment" and that Watson seemed "coherent, organized, logical, and goal-directed" and did not appear "to have any impairment in competency." *Id.* at 115. The court also relied on other competency reports that did not indicate any "causes of concern with [Watson's] competency abilities or the medication he was on." *Id.* And the district court relied on the state trial court's own assessment of Watson, namely, that it did not "perceive any differences in [his] functioning between any [prior court dates] and today." *Id.*

No reasonable jurist could disagree with the district court's determination. The record clearly demonstrates that Watson did not appear impaired or confused when taking his medication. And doctor reports and other competency reports showed that the medication could not cause an impairment in any event.

6

It is true that on one hearing day, Watson expressed that he had "problems being able to interview the witness" and another "problem" with fashioning arguments in a way the court could understand. *Id.* at 116. But these problems were not attributable to his medication, or at least, the record does not support that notion. Neither Watson nor his advisory counsel argued that his medication caused or contributed to his difficulties with cross-examination. He instead pinned the blame on his abilities (or rather the lack thereof), stating "I just didn't know I couldn't get [the information] out there." *Id.* Also, when Watson requested to proceed pro se the first time around, he declared that his medication did not affect his "ability to understand these proceedings." *Id.* at 117.

All considered, Watson made four requests related to his representation—two of them being the same request to proceed pro se. The state trial court had evidence that Watson vacillated on whether to proceed pro se, which allowed it to "ascribe a 'constitutional primacy' to the right to counsel." *Mackovich*, 209 F.3d at 1237 (citation omitted). Because no reasonable jurist could disagree with the district court's dismissal of Watson's first claim, we deny him a COA on this ground.

Watson responds that reasonable jurists could disagree with the district court's decision because his second pro se request had been deemed voluntary and intelligent. *See Faretta*, 422 U.S. at 807. Although that may be true, those factors do not limit a trial court's discretion to "terminate self-representation" if "a defendant [] deliberately engages in serious and obstructionist misconduct." *Id.* at 834 n.46; *see Mackovich*, 209 F.3d 1227, 1237; *United States v. Williams*, 201 F.3d 449, 449

7

(10th Cir. 1999) (unpublished) (stating that courts have this power even if the request to proceed pro se is "properly invoked"). And here, as the district court recognized, the record indicates that Watson "manipulat[ed] the trial process by vacillating about whether he wanted to represent himself." R. Vol. II at 115, 117.

Next, Watson contests the record. In his view, he "filed no pleading requesting that new counsel be appointed"; rather, he "was simply being presistent [sic] in his continuing request to represent himself." COA Application at 4. A review of the record indicates that his recollection is mistaken. *See* R. Vol. I at 169–70 (recounting the events). In fact, even his own brief filed in state court indicates that he made numerous requests related to his representation, going back and forth between pro se status and having counsel. *See id.* at 64 ("[Watson] filed numerous motions to proceed pro se . . . . His initial oral motion to proceed pro se with advisory counsel was granted . . . . He represented himself during a portion of the hearing on the motion to suppress statements, and approximately one hour into the hearing, he requested and was granted reappointment of the public defender . . . . Mr. Watson renewed his request to proceed pro se five months later.").

## B.

Watson next brings two ineffective assistance of counsel claims. Generally, the Sixth Amendment requires defense counsel to effectively assist a criminal defendant at trial. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To bring an ineffective assistance of counsel claim, Watson must show that (1) his counsel's performance was deficient by making "errors so serious that counsel was

8

not functioning as the 'counsel'" and (2) the deficient performance caused prejudice, meaning that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.

When assessing those elements, federal courts apply a "doubly deferential judicial review" standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). They "defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018).

With that in mind, courts "considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). For there exist "countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. That is why criminal defendants face the rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002). And "where it is shown that a particular decision was, *in fact*, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *Id.*

Watson's first ineffective assistance of counsel claim alleges that his trial counsel misadvised him on the use of an "involuntary intoxication" affirmative

defense. More specifically, Watson argues that his defense counsel initially "endorsed" using that affirmative defense and later informed the state trial court there was no basis for that defense. Aplt. Br. at 19. He then reasons that counsel informing the state trial court during pretrial proceedings that there was no basis for an involuntary intoxication defense resulted in an ineffective defense at trial. And he also contends that his counsel's initial advice caused him to decide about appearing pro se, which contributed to the state trial court's decision to deny his second pro se request.

In large part, the district court denied Watson's application because he did not allege that his counsel's deficient performance caused prejudice. The court explained that Watson failed to demonstrate that his counsel's assistance prevented him from proceeding pro se and that had he proceeded pro se, there was a substantial chance that the result of trial would have been different.

For support, the court looked to the record, where the Colorado Court of Appeals clearly stated that "trial counsel had nothing to do with [Watson's] decision to retract his request to go pro se because trial counsel had withdrawn by then, and thus [Watson] failed to show that counsel's statements at the October 2014 conflicts hearing prevented him from representing himself at trial." R. Vol. II at 124 (emphases omitted). The district court also looked to the state court's actual reasoning for denying Watson's second pro se request—again, that Watson had "vacillated" about whether to proceed pro se or proceed with appointed counsel. *Id.* And lastly, the district court saw that the record clearly showed that the involuntary

intoxication defense was advanced at trial, yet the jury still convicted him.[1]  On all fronts, the district court found that the counsel's alleged deficient performance had no effect on the outcome of trial.  And Watson did not dispute the state court's findings on which the district court relied.

Given that a petitioner must show prejudice to make out an ineffective assistance of counsel claim, *Strickland*, 466 U.S. at 687, 694, and Watson did not, no reasonable jurist could disagree with the district court's decision to deny habeas relief on this claim.  Therefore, we deny Watson a COA on his second claim.

**C.**

Watson's next ineffective assistance of counsel claim alleges that his trial counsel created a "conflict of interest" by coercing him to accept a plea deal with bribes of money and a television.  Aplt. Br. at 4.  To recap, *Strickland* requires a showing of prejudice for an ineffective assistance of counsel claim to be successful.  466 U.S. at 687, 694.  But when it comes to the Sixth Amendment right to have trial representation "free from conflicts of interest," *Wood v. Georgia*, 450 U.S. 261, 271 (1981), courts do not need to engage in the typical prejudice inquiry.  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).  Instead, courts apply the "*Cuyler* exception," *United States v. Williamson*, 859 F.3d 843, 856 n.3 (10th Cir. 2017) (cleaned up), in which courts presume prejudice if a criminal defendant can demonstrate that his trial

---

[1] Watson argues that his counsel's advice created ineffectiveness that later prejudiced Watson in his pursuit of this defense.  That is simply not the case.  Watson still presented the involuntary intoxication defense at trial.  It just was not successful.

counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance," *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)).

An actual conflict of interest arises where "the interests of counsel and defendant [are] divergent in the current litigation, such that the attorney has an interest in the outcome of the particular case at issue that is adverse to that of the defendant." *Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000). As of now, the Supreme Court has indicated that only the concurrent representation of multiple defendants creates an actual conflict of interest. *See Mickens*, 535 U.S. at 175–76. And if a trial court "knows or reasonably should know that a particular conflict exists," the court must "initiate an inquiry." *Cuyler*, 446 U.S. at 347.

Starting things off, the district court stated that whether Watson's proposed bribing conflict serves as an *actual conflict* under Supreme Court precedent remains an "open question." R. Vol. II at 127 (quoting *Mickens*, 535 U.S. at 176 (noting that it is an "open question" whether the *Cuyler* exception to *Strickland* for cases of actual conflicts of interest applies outside the context of concurrent representation of multiple defendants)). And so, instead of automatically assuming prejudice from Watson's proposed conflict under the *Cuyler* exception, the district court required Watson to show that the Colorado Court of Appeals unreasonably applied *Strickland*.

In terms of this application of law, no reasonable jurist could disagree with the district court's approach. Indeed, this Court has even noted what the district court did was correct. *Williamson*, 859 F.3d at 856 (concluding that "*Mickens* clarified that

12

the automatic reversal rule applies only to multiple representation conflicts of interest," not other proposed ethical conflicts between a criminal defendant and his counsel).[2]

Applying *Strickland*, the district court found that Watson failed to demonstrate prejudice. In reaching that conclusion, the district court looked to the Colorado Court of Appeals's decision, which determined that Watson failed to allege that plea counsel had created a conflict of interest and that the conflict had adversely affected counsel's representation by encouraging Watson to take a plea deal.

No reasonable jurist could disagree with the district court's denial of habeas relief on this claim. Watson could not show that the Colorado Court of Appeals unreasonably applied *Strickland* because he failed to show prejudice. That being so, we deny a COA on Watson's third claim.

In response, Watson argues that the state trial court did not further investigate his counsel's alleged bribes after getting confirmation from the counsel that "they provided Watson with funds on his account, and had offered him a television, but this was only because they liked Mr. Watson." COA Application at 6; *see* Aplt. Br. at 35. But, as the district court reasoned, what Watson identifies as a possible conflict has not been determined as an actual one under Supreme Court precedent. *See* R. Vol. II at 127; *Williamson*, 859 F.3d at 856. As a result, no reasonable jurist would disagree

---

[2] Because no reasonable jurist could disagree with how the district court applied *Strickland* and *Cuyler*, *see Mickens*, 535 U.S. at 176; *Williamson*, 859 F.3d at 856, Watson's argument that he did not need to show prejudice fails. The *Cuyler* exception did not apply to Watson's proposed ethical conflict.

with the district court's conclusion that *Cuyler*—which would require that a trial court investigate an actual conflict—did not apply to Watson's case because he did not allege an actual conflict. *See* 446 U.S. at 347 ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.").

## IV.

For these reasons, we DENY Watson's request for a COA and dismiss this matter. We also DENY Watson's motion to proceed in forma pauperis on appeal.

Entered for the Court

Allison H. Eid
Circuit Judge