MEMORANDUM AND ORDER
 

 EARL E. O’CONNOR, District Judge.
 

 This matter is before the court on the following motions of defendant Burlón R. Davis:
 

 Motion for Reconsideration Pursuant to Rule 60(b) of Fed.R.Civ.P. of Order Denying Movant’s Motion for Appointment of Counsel, Request of Transcripts, and Request for Discovery (Doc. # 424); and Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doe. #405).
 

 Both motions are fully briefed and the court is now prepared to rule. For the reasons stated herein, both motions are denied.
 

 I.
 
 Defendant’s Motion for Reconsideration
 

 The decision of whether to grant or deny a motion for reconsideration is committed to the court’s discretion.
 
 See Hancock v. City of Oklahoma City,
 
 857 F.2d 1394, 1395 (10th Cir.1988) (district court’s decision on
 
 *812
 
 motion for reconsideration is reviewed under abuse of discretion standard). It is well established that a motion for reconsideration is the opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law.
 
 Harsco Corp. v. Zlotnicki,
 
 779 F.2d 906, 909 (3d Cir.1985),
 
 cert. denied,
 
 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party’s position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination.
 
 Anderson v. United Auto Workers,
 
 738 F.Supp. 441, 442 (D.Kan.1990);
 
 Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,
 
 605 F.Supp. 6, 7 (N.D.Ill.1983).
 

 The court has reviewed its order of June 18, 1996, and concludes that the order does not contain any “manifest errors of law or fact.” Defendant does not assert in his motion the existence of any newly discovered evidence, nor does he maintain reconsideration is warranted based upon a change in the law.
 

 With respect to his request for appointment of counsel, defendant merely asserts that an appointed counsel would be helpful, without showing why the court erred in the exercise of its discretion. Defendant has failed to demonstrate that he meets any of the factors that courts consider for appointment of counsel.
 

 With regard to defendant’s request for transcripts, the court, in its June 18th order, found as an uncontroverted fact that defendant’s counsel failed to challenge the impanelling of the jury and failed to call any witnesses on defendant’s behalf at trial. The court stated: “In light of the court’s foregoing concession, defendant’s request for portions of the trial transcript is rendered moot.” Memorandum and Order, at 2. Defendant fails to explain how the court abused its discretion, or how any of the circumstances appropriate for a motion to reconsider exist. The court notes that defendant is not denied the opportunity to have the transcripts, but only denied the opportunity to have free transcripts.
 

 As to his request for discovery, defendant has not made any claims regarding the selection of the jury that would state a colorable claim, even if he were granted the requested discovery.
 
 See,
 
 discussion,
 
 infra,
 
 at 816-819;
 
 see also United States v. Bennett,
 
 539 F.2d 45, 55 (10th Cir.),
 
 cert. denied,
 
 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976);
 
 United States v. Evans,
 
 542 F.2d 805, 812 (10th Cir.1976),
 
 cert. denied,
 
 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977).
 

 The court declines, in its discretion, to reconsider its order of June 18,1996. Defendant, in the instant motion, has provided no legally tenable basis for the court to reconsider its decision.
 

 II.
 
 Defendant’s Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence
 

 Defendant was originally charged and convicted of various drug-related offenses, including conspiracy to possess with intent to distribute, and possession with intent to distribute, cocaine base within one-thousand feet of an elementary school. The procedural history of this case is accurately set forth in the defendant’s brief (Doc. # 420) at pages two and three and is incorporated and made a part of this memorandum and order.
 

 The motion now before us was filed on March 4, 1996, some five and one-half years after defendant was tried and convicted. Defendant seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the following grounds: that defendant received ineffective assistance of counsel; and that his petit jury was unconstitutionally selected and impanelled. Defendant also requests an evidentiary hearing. The court has reviewed all materials filed, together with pertinent portions of the record, and is now prepared to rule.
 

 A.
 
 Defendant’s Ineffective Assistance of Counsel Claim
 

 Defendant contends that Mr. Dent, his trial attorney, was ineffective in the following respects: (1) failing to interview and subpoe
 
 *813
 
 na various witnesses; (2) failing to interview the defendant; (3) failing to cross-examine co-defendants Dana Nelson and Daniel Nelson; (4) failing to obtain an expert witness to perform a voice exemplar; (5) failing to object to the admission of letters seized from defendant’s person; and (6) failing to object to the composition of the jury. Defendant contends that the foregoing alleged errors, individually and collectively, denied him his Sixth Amendment right to effective assistance of counsel.
 

 The Tenth Circuit has summarized the standards for evaluating claims of ineffective assistance of counsel in
 
 United States v. Smith,
 
 10 F.3d 724, 728 (10th Cir.1993):
 

 The benchmark of an ineffective assistance of counsel claim is “whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.”
 
 Strickland v. Washington,
 
 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). “To establish ineffective assistance of counsel sufficient to warrant reversal of a conviction, the defendant must show that counsel’s performance was deficient and that this deficient performance prejudiced the defense.”
 
 United States v. Pena,
 
 920 F.2d 1509, 1518 (10th Cir.1990) (citing
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064). Because a defendant must meet both of these requirements to establish an ineffective assistance of counsel claim, a claim may be disposed of for failure to meet either criteria.
 
 Strickland,
 
 466 U.S. at 697, 104 S.Ct. at 2069;
 
 e.g., Coleman v. Brown,
 
 802 F.2d 1227, 1233 (10th Cir. 1986).
 

 The standard for determining whether an attorney’s performance is deficient or not is that of reasonably effective assistance. “In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel’s assistance was reasonable considering all the circumstances” and a defendant must demonstrate that counsel’s conduct fell below an objective standard of reasonableness given prevailing professional norms.
 
 Strickland,
 
 466 U.S. at 688, 104 S.Ct. at 2064. In making this determination, we are to avoid the distorting effects of hindsight and we are required to “reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. at 2065. A defendant must overcome the strong presumption that “counsel’s conduct falls within the wide range of reasonable professional assistance,” and we are reminded that there are “countless ways to provide effective assistance” of counsel.
 
 Id.
 

 To prevail on his motion, the defendant must also show that trial counsel’s performance was so prejudicial to the defense that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. at 2068;
 
 United States v. Rantz,
 
 862 F.2d 808,
 
 810-11
 
 (10th Cir.1988),
 
 cert. denied,
 
 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989). A reasonable probability is “a probability sufficient to undermine confidence in the outcome.”
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. at 2068.
 

 The Sixth Amendment imposes on counsel a duty to investigate.
 
 Id.
 
 at 691, 104 S.Ct. at 2066-67. However, the investigation need not be exhaustive because the duty to investigate includes the duty “to make a reasonable decision that makes particular investigations unnecessary.”
 
 Id.
 
 at 691, 104 S.Ct. at 2066. Finally, a court need not first determine whether an attorney’s performance was deficient before examining the prejudice a defendant might have suffered.
 
 Id.
 
 at 697, 104 S.Ct. at 2069-70. A court may dispose of a claim if there simply is a lack of sufficient prejudice.
 
 Id.
 

 Defendant first asserts that his counsel was ineffective for failing to investigate and subpoena the following individuals: Rosemary Bullard, Denise Davis, Dottie Davis, Harvey Curry, Robert Hernandez, Sr., Angela Hooks, Kelly Kulas, James Moss, Damon Nelson, Diana Nelson, Misty Novaek, and Betty Reed. The government charged defendant with selling cocaine base in Bonner Springs on June 27, 1989. Defendant states that he requested his counsel to inves
 
 *814
 
 tigate these individuals, because they would testify as alibi witnesses that defendant was not in Bonner Springs on June 27, 1989.
 

 The only people from whom defendant obtained affidavits were his four co-defendants, Damon Nelson, Diana Nelson, James Moss, and Harvey Curry. Significantly, none of defendant’s purported witnesses states in their affidavit either that they would have been willing to testify, or that at the time of trial, they would have been willing to waive their Fifth Amendment rights. Without affirmative waiver of the Fifth Amendment, the proffered testimony of the eodefendants is merely speculative.
 

 Moreover, the government aptly points out that defendant ignores the fact that the codefendants had attorneys who may have advised their clients not to testify, and that since five of the seven codefendants did not even testify for themselves, it is unlikely they would have testified for defendant absent a severance order.
 

 The government also charged defendant with selling cocaine base in Bonner Springs on July 18,1989. Although defendant represents to the court that Denise Davis and Misty Novack would have testified that movant was not in Bonner Springs on July 18, 1989, because defendant was in Junction City with them on that date, defendant has failed to attach an affidavit from either of these purported witnesses.
 

 Additionally, defendant states that counsel was ineffective in failing to question him as to his whereabouts on June 27, 1989, and July 18, 1989, while he was on the witness stand. In response, the government has submitted the affidavit of Mr. Dent. In his affidavit, Mr. Dent avers that he does not recall being told by defendant that defendant had an alibi. Moreover, as the government notes, defendant had ample opportunities while testifying to mention that he could not have made the sales as charged because he was out of town on those days. For example, when he was asked by Mr. Dent whether he had ever sold or distributed crack cocaine, he merely answered “no.” Transcript of Trial, at 1640.
 

 Mr. Dent further states in his affidavit that he does not recall being told by defendant that certain people would serve as alibi witness. Mr. Dent avers that he is certain that if defendant had wished to have listed certain people as alibi witnesses, then counsel would have done so, because counsel had no reason not to list alibi witnesses, and that he had in fact filed an extensive witness list. Mr. Dent represents that had defendant given him an alibi, defense, he would have presented such a defense. The most logical conclusion that can be drawn from these facts is that defendant never told his attorney that there were witnesses who could establish an alibi for him.
 

 Defendant next contends that his counsel was ineffective in failing to interview him. Such allegation is contradicted by Mr. Dent’s affidavits, defendant’s own § 2255 motion, and the record. Mr. Dent, as an officer of the court, avers through affidavit that:
 

 Contrary to Mr. Davis’ statements ... counsel had numerous visits and correspondence with the defendant concerning the defense to be presented in this ease. Counsel does recall specifically visiting with defendant at the place of his incarceration prior to trial to review potential witnesses. Defendant gave a list with numerous names on it, none of which had an address, as potential witnesses. Working together, counsel and defendant were able to pare the list down to approximately 30 names____ Counsel and defendant discussed witnesses and what they might testify to and where their whereabouts might be, at great length---- Many witnesses could not be contacted since movant never provided counsel with an address or phone number for them and counsel had no other way to locate them. Counsel and movant discussed what potential witnesses there were and why their testimony would or would not be helpful. Movant had no objection to counsel’s trial strategy.
 

 The court is satisfied and finds, by a preponderance of the evidence, the facts as recited in Mr. Dent’s affidavit to be true. Defendant, in his own motion, states that he talked to Mr. Dent about potential witnesses. Defendant even attached the witness list Mr.
 
 *815
 
 Dent filed, which contains over thirty names. We find it highly implausible that Mr. Dent could have obtained the names of these witnesses without having interviewed the defendant. We conclude that defendant’s contentions on this point are without substance.
 

 Defendant next claims that his counsel was ineffective in failing to cross-examine co-defendants Dana Nelson and William Nelson, Sr. Defendant alleges that Dana Nelson would have testified that on June 27, 1989, defendant was not in Bonner Springs, but in Coffeyville, Kansas. Nowhere, however, in Dana Nelson’s attached affidavit does he state that he was willing to testify. Furthermore, the affidavit does not set forth any basis for Dana Nelson to have such knowledge; the affidavit makes no mention of Dana himself being in Coffeyville at the time in question, or of Dana otherwise having any personal knowledge from which he could have testified.
 

 On the other hand, William Nelson, Sr.’s affidavit does state that if he were questioned while on the witness stand during trial, he would have testified that: defendant, along with Nelson and others, left Bonner Springs on June 26, 1989 to go to Coffeyville; that defendant did not return to Bonner Springs until June 30, 1989; and that defendant, along with Nelson and others, was in Junction City on July 18, 1989. However, such evidence alone is insufficient to demonstrate ineffective assistance: defendant has failed to show that there is a reasonable probability that, absent Mr. Dent’s failure to cross-examine William Nelson, the jury would have had a reasonable doubt respecting defendant’s guilt. As the government points out in its brief, even if William had testified as an alibi witness, he likely would have lacked credibility, because it reasonably would have appeared to the jury that William’s testimony was in exchange for defendant’s attempt to take the blame at trial for sixty-two grams of cocaine found in William’s house. In addition, the court has carefully reviewed the record in this case, and concludes that, given the totality of the evidence before the jury, there was overwhelming evidence of defendant’s guilt. The government accurately summarizes the evidence presented at trial against defendant at pages fourteen and fifteen of its brief, and we incorporate that recitation as part of this order.
 

 Defendant next complains that his attorney failed to have an expert conduct voice identification analysis of defendant’s voice. Specifically, defendant maintains that an expert should have performed a voice exemplar of defendant’s voice and compared it with the voices heard on the tape recordings of June 27, 1989, and July 18, 1989. He asserts that he advised Mr. Dent that the voices on the tapes were not his, and that a number of people frequented the house at 223 North Neconi, where the intercepted conversations allegedly occurred.
 

 Use of an expert is generally consid- • ered within the realm of trial counsel’s discretion. Defendant has presented the court with no authority which demonstrates that Mr. Dent had a clear duty to retain an expert to perform a voice exemplar. There is no evidence that an attorney rendering reasonably effective assistance would have deemed such a request essential to the defense of the case. From a review of the record, we find that the tape recordings were not the pivotal evidence; but rather comprised only a part of the prosecution’s ease against the defendant. Moreover, the jury, who heard defendant testify at length, was permitted to listen to the tape recordings and make their own voice comparison. Additionally, the court concludes that the evidence against defendant was so overwhelming that no reasonable probability exists that the result of the proceeding would have been different.
 

 Defendant next contends that his attorney erred in failing to object to the admission of letters seized from defendant’s person, on the grounds that the government failed to prove defendant was the author of the letters. One of the letters, government’s exhibit 64, mentioned Burlon “starting with a certain number of rocks at a certain time.” Transcript of Trial, p. 1666. Defendant conceded at trial that the other letter, government’s exhibit 59, was a “payment list.” That letter stated that Burlon “started with 15 rocks 5:34 p.m., total $450 to be turned in.” Transcript of Trial, p. 1667. Defendant asserts that his counsel should have intro
 
 *816
 
 duced into evidence a laboratory report, which documented the results of a handwriting analysis performed on the letters. He claims introduction of the lab report may have proved his innocence.
 

 Defendant’s argument is without merit. The court has examined the laboratory report. The lab report states: “the individuals who made the samples described as Exhibits K1 through K8 could neither be identified or eliminated as the writer or writers of Exhibits Q1 and Q2.” In essence, the report was inconclusive. At trial, defendant claimed he did not recognize the handwriting of the notes, and denied that the notes were even taken from his pocket. Transcript of Trial, pp. 1666-67. It would have added nothing to his defense to show that the handwriting analysis was inconclusive, and thus would not have assisted defendant in disproving that he was the author. Defendant has not shown how failure to introduce the lab report resulted in any prejudice to his defense.
 

 Finally, defendant contends that his counsel was ineffective in failing to object or otherwise challenge the impanelling of an all-white jury. Defendant states that prior to and during jury selection, he informed counsel of his desire to have members of his race (African-American) on his jury; that “Muring vior [sic] dire, there were no African Americans to even choose from;” and that despite asking his attorney to challenge the venire, his counsel failed to do so. Further, defendant asserts that it could not have been simply a strategic decision on his counsel’s part “not to raise this most basic and fundamental right.” Defendant’s Brief (Doc. # 405), at 17.
 

 At the outset, we remind movant that “a defendant has no right to a ‘petit jury composed in whole or in part of persons of his own race.’”
 
 Batson v. Kentucky,
 
 476 U.S. 79, 85, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986) (citing
 
 Strauder v. West Virginia,
 
 100 U.S. 303, 305, 25 L.Ed. 664 (1880)). The Supreme Court has “never held that the Sixth Amendment requires that ‘petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population,____’ ”
 
 Id,
 
 476 U.S. at 86, n. 6, 106 S.Ct. at 1717 n. 6 (citing
 
 Taylor v. Louisiana,
 
 419 U.S. 522, 538, 95 S.Ct. 692, 701-02, 42 L.Ed.2d 690 (1975)).
 

 On January 9, 1993, three years after his conviction, defendant wrote Mr. Dent a letter seeking an affidavit explaining why counsel had not objected to the venire. In'response, Mr. Dent sent defendant a letter, dated January 25,1993, attached to defendant’s motion as Appendix I, which states as follows:
 

 I believe I have told you before, the reason that none of the counsels for defendant’s [sic] objected to the jury panel at trial was that we had no proof or reason to believe that there had been a systematic exclusion of blacks from the panel. It is true that as best I can recall, there were no blacks who were seated as part of the voir dire but that is not unusual in this particular Federal District Court, since the jury panels are drawn from a wide area including several rural counties.
 

 Mr. Dent reiterates through his affidavit that it was not uncommon for jury panels in this district to include few, if any, African-Americans because the panel is drawn from a wide area, including rural areas.
 

 The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., provides, in pertinent part:
 

 It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.
 

 28 U.S.C. § 1861. Defendant apparently argues that because no African-American was a member of his venire, he was deprived of his right to a jury selected from a fair cross-section of the community.
 

 We find no merit to this contention under the circumstances of this case. The system employed by the Federal District of Kansas for selecting petit juries has previously been the subject of judicial scrutiny, and has been found to meet the requirements of 28 U.S.C. § 1861 et seq. In
 
 United States v. Evans,
 
 542 F.2d 805, 812 (10th Cir.1976), the Tenth Circuit stated:
 

 
 *817
 
 The petit jury selection process used in the District of Kansas was recently held valid by this court.
 
 See, United States v. Bennett,
 
 Tenth Circuit, 589 F.2d 45, filed June 28, 1976. Moreover, the circuits are in complete agreement that not only is the use of actual voter lists proper, but that neither the Act nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in a proportion lower than the rest of the population.
 

 In
 
 United States v. Bennett,
 
 539 F.2d 45, 55 (10th Cir.),
 
 cert. denied,
 
 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), the court held that defendant failed to establish a violation of 28 U.S.C. § 1861 which would require the clerk to supplement the juror list, where defendant failed to show that “a recognizable, identifiable class of persons otherwise entitled to be jurors ‘has been purposefully and systematically excluded from jury service.’ ”
 

 “Reasonable and effective assistance of counsel does not require an attorney to sift through voluminous jury records every time his client requests that he challenge the array as unconstitutionally drawn.”
 
 Gustave v. United States,
 
 627 F.2d 901, 906 (9th Cir. 1980). “There must be some evidence of irregularity in jury selection practices before failure to object to the panel rises to the level of ineffective assistance of counsel.”
 
 Id.
 
 (citing
 
 Arnold v. Wainwright,
 
 516 F.2d 964, 970-71 (5th Cir.1975),
 
 cert. denied,
 
 426 U.S. 908, 96 S.Ct. 2230, 48 L.Ed.2d 833 (1976)).
 
 See also United States v. Ward,
 
 610 F.2d 294, 295 (5th Cir.1980) (defendant’s counsel not ineffective in failing to challenge jury selection process, where jury selection process used in the Northern District of Georgia at that time had been held to be constitutional and to comply with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq.);
 
 Smith v. United States,
 
 456 F.2d 121, 122 (3rd Cir.1972) (where grand and petit jury selection system employed in district had already been found to meet the requirements of 28 U.S.C. § 1861 et seq., and the petitioner, in habeas corpus petition, submitted only unsubstantiated assertion that blacks were systematically excluded, no deprivation of effective assistance of counsel was shown by counsel’s failure to object to array of grand and petit juries).
 

 Likewise here, defendant has offered the court nothing more than his unsubstantiated assertion that blacks were systematically excluded from his venire. Though defendant claims his counsel should have filed pre-trial motions seeking discovery of the juiy wheel, such a motion based on groundless speculation (for that is all defendant presents in the instant motion) would have been denied.
 

 Defendant’s claims of ineffective assistance of counsel are simply not borne out by the record. We find that none of the alleged errors, when viewed singly or cumulatively, rise to the level of deficient performance so as to constitute ineffective assistance.
 

 Moreover, even if we were to assume that Mr. Dent’s representation of defendant was somehow deficient, defendant has simply failed to show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the results of the proceeding would have been different.”
 
 United States v. Rantz,
 
 862 F.2d 808, 810-11 (10th Cir.1988),
 
 cert. denied,
 
 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989). The evidence presented at trial against defendant, aside from that which defendant alleges was wrongfully admitted, was overwhelming. Defendant has simply not met his burden of showing “that the decision reached would reasonably likely have been different absent the alleged errors.”
 
 Strickland,
 
 466 U.S. at 696, 104 S.Ct. at 2069. Furthermore, as the government notes, even if defendant’s counsel had done all that defendant now claims counsel should have done, and defendant had been acquitted on the substantive counts, defendant still would have been convicted on the conspiracy count and his sentence would have remained the same.
 

 B.
 
 Defendant’s Claim that the Petit Jury was Unconstitutionally Selected or Impanelled
 

 Apart from his claim of ineffective assistance of counsel, defendant again raises the contention that his juiy was unconstitutionally selected and impanelled., Defendant articulates his challenge to the selection and impanelling of his petit jury as follows:
 

 
 *818
 
 [T]here are African Americans that reside in the area where his venire panel was choosen [sic] from that are registered voters, and possess the qualifications to participate in jury service. Therefore, at the least, there should have been one (1) member from movant’s race on his venire panel, but there was not and movant’s counsel conceded to this fact.
 

 [T]he movant contends that his attorney’s failure and refusal to object and or challenge, compounded by his no proof or reason to believe that there had been a systematic exclusion of African Americans from the venire panel shows that movant’s rights to due process of law was violated as well as the equal protection principles, which further deprived movant of his rights under the sixth and fourteenth amendments to a jury made up from a fair cross-section of the community.
 

 Defendant’s Brief (Doe. # 405), at 22,27.
 

 The Tenth Circuit has previously considered the requirements for asserting on appeal the argument that defendant was deprived of his Sixth Amendment right to a jury selected from a fair cross-section of the community. In
 
 United States v. Bedonie,
 
 913 F.2d 782 (10th Cir.1990),
 
 cert. denied,
 
 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991), the court first articulated the relevant law:
 

 [Appellants next argue that their “Sixth Amendment right to a jury selected from a fair cross-section of the community” was violated and that said violation amounts to plain error. Appellants’ argument is directed at the facts that there were no Native Americans among the 120 persons on the venire and the only “person who professed some fraction of Native American heritage ... was not seated on the juiy.”
 

 28 U.S.C. § 1867(e) provides:
 

 The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil ease may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title [the Federal Jury Selection and Service Act (“the Act”), 28 U.S.C. §§ 1861-1878.]
 

 28 U.S.C. 1867(e) “provides the exclusive means for a party charged with a federal crime to challenge a jury.”
 
 United States v. Cooper,
 
 733 F.2d 1360, 1366 (10th Cir.),
 
 cert. denied,
 
 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).
 

 Section 1867(a) sets forth the applicable time limitations for a criminal defendant’s challenge: “In criminal eases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him____” The defendant’s motion must contain a “sworn statement of facts which, if true, would constitute a substantial failure to comply” with the Act. Section 1867(d).
 

 Id.
 
 at 793-94. In applying the foregoing law, the court concluded:
 

 Appellants did not challenge the venire or the selection of the jury in this case before the district court — much less in a manner consistent with the procedures prescribed by § 1867(a) and (d). “If a party fails to comply with the statutory procedures [of § 1867], a court may not hear the claim.”
 
 United States v. Martinez-Nava,
 
 838 F.2d 411, 413 (10th Cir. 1988).
 
 See also Cooper,
 
 733 F.2d at 1366.
 

 Id.
 
 at 794.
 
 See also United States v. D’Alora,
 
 585 F.2d 16, 22 (1st Cir.1978) (appellant’s attempt to challenge the jury panel on constitutional grounds, without even attempting to comply with requirements of Jury Selection and Service Act, rendered objection to composition of panel without legal effect).
 

 Courts have also held that the statutory procedures of § 1867 still must be complied with in bringing a section 2255 collateral attack. In
 
 Porcaro v. United States,
 
 784 F.2d 38, 43 (1st Cir.),
 
 cert. denied,
 
 479 U.S. 916, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986), the court reasoned:
 

 
 *819
 

 [W]e see no basis for an ineffective assistance of counsel claim to excuse petitioner’s procedural default.
 
 Furthermore, had petitioner timely moved to dismiss the indictment under. 28 U.S.C. § 1867 on the ground of improper jury selection, he would have been required to file a sworn statement of facts showing substantial failure to comply with 28 U.S.C. § 1861 et seq. before being entitled to an evidentiary hearing.
 
 No less should be required in a belated challenge under § 2255.
 

 (Emphasis added.)
 
 See also Shotwell Mfg. Co. v. United States,
 
 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (timing and waiver provisions of Rule 12(b)(2) apply to constitutional challenges to grand and petit jury arrays; relief from those provisions will not be granted where defendant has not shown cause and prejudice);
 
 Spencer v. Kemp,
 
 781 F.2d 1458, 1462, 1463 n. 4 (11th Cir.1986) (court applied
 
 Shotwell
 
 in dicta to find defendant raised claim too late to preserve issue for collateral attack);
 
 United States v. Vecchiarello,
 
 536 F.2d 420, 423 (D.C.Cir.1976) (citing Shotwell);
 
 Paige v. United States,
 
 493 F.2d 22, 23 (9th Cir.),
 
 cert. denied,
 
 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 238 (1974) (court, citing
 
 Shotwell,
 
 held that trial court did not abuse its discretion in refusing to consider belated claim regarding petit jury selection, where no specific prejudice to the defendant was shown);
 
 Jeffers v. United States,
 
 451 F.Supp. 1338, 1345 (N.D.Ind. 1978).
 

 Applying the law as set forth in the foregoing cases, we find that even if defendant could establish that the basis for his failure to timely challenge the selection of the jury was due to ineffective assistance of counsel (thus satisfying the “cause” requirement), defendant has still failed to satisfy the prejudice requirement. As we have previously noted, the evidence presented at trial against defendant was overwhelming.
 

 Even if we were to examine the merits, we find defendant cannot prevail on his claim. Although defendant states that he has “reason to believe” that there had been a systematic exclusion of African Americans from the venire panel, he fails to enunciate any specific facts stating what constituted the systematic exclusion. Instead, he merely artieulates his theory that because there were African Americans residing in the area where his venire panel was chosen that were registered to vote, he was entitled to at least one member of his race on his venire.
 

 As we have discussed
 
 supra
 
 at 816-817, the jury selection system employed in the Federal District of Kansas has been upheld as constitutional.
 
 See United States v. Bennett,
 
 539 F.2d 45, 55 (10th Cir.),
 
 cert. denied
 
 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). Moreover, defendant has no right to a “petit jury composed in whole or in part of persons of his own race.”
 
 Batson,
 
 476 U.S. at 85, 106 S.Ct. at 1717.
 

 The burden is on the defendant to establish a prima facie case of unconstitutional disproportionality.
 
 United States v. Benmuhar,
 
 658 F.2d 14, 19 (1st Cir.1981),
 
 cert. denied
 
 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982). We conclude that defendant has not demonstrated that any underrepresentation of African-Americans on his jury venire was due to their “systematic exclusion in the jury-selection process.”
 
 Duren v. Missouri,
 
 439 U.S. 357, 366, 99 S.Ct. 664, 669, 58 L.Ed.2d 579 (1979).
 

 The court concludes that for all the reasons discussed, the files and records in this case conclusively show that defendant is entitled to no relief; thus, an evidentiary hearing is not necessary. No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conelusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court.
 
 United States v. Evans,
 
 51 F.3d 287, No. 94-5139, 1995 WL 139420 (10th Cir. Mar. 31, 1995) (citing
 
 United States v. Frye,
 
 738 F.2d 196 (7th Cir.1984)).
 

 IT IS THEREFORE ORDERED that defendant’s motion for reconsideration (Doc. # 424) is denied.
 

 IT IS THEREFORE ORDERED that defendant’s motion to vacate, set aside, or correct his sentence (Doe. # 405) is denied.